UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JOSSEAN CRISPIN,                             :
      Plaintiff,                          :
                                          :
      v.                                  :     Case No. 3:20cv1184(KAD)
                                          :
CORRECTIONAL OFFICER                         :
ROACH, ET AL.,                               :
      Defendants.                         :

## **<u>INITIAL REVIEW ORDER</u>**

Plaintiff, Jossean Crispin ("Crispin"), currently incarcerated at Cheshire Correctional

Institution, brings this civil rights complaint pursuant to 42 U.S.C. § 1983 against Correctional

Officers Roach and John Doe, Nurse Eric, Dr. Gerald Valletta, Warden Amonda Hannah,

District Administrator William Mulligan, Captain Fyed Syed, Health Services Administrative

Remedies Coordinator Cynthia Nadeau, Lieutenant Sciascia and Connecticut State Trooper Jane

Doe.  He has also filed a motion to freeze assets and a motion for discovery/request for

production of documents. For the reasons set forth below, the Court dismisses certain of

Crispin's claims and denies both motions.

### **Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints

against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous,

malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary

relief from a defendant who is immune from such relief." *Id.*  In undertaking this review, the

Court is obligated to "construe" complaints "liberally and interpret[] [them] to raise the strongest

arguments that they suggest."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)

(internal quotation marks and citation omitted).

Although detailed allegations are not required under Rule 8(a) of the Federal Rules of

Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.  *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). [1]

**Allegations**

The allegations in the complaint arise from an incident on July 22, 2019 at Garner Correctional Institution ("Garner"), at which time Crispin was a sentenced inmate.[2] Specifically, on July 22, 2019, Crispin was confined in Cell 620 in the In-Patient Medical ("IPM") Unit at Garner.  *See* Compl., ECF No. 1, at 1 ¶¶ 1, 6; at 16-17, Ex. B.  At some point between 5:50 a.m. and 7:45 a.m. that morning, Correctional Officer Roach woke Crispin up for breakfast and medication call.  *Id.* at 7 ¶¶ 1-2; at 16-19, Exs. B, C.  Crispin noticed an extra breakfast tray on the cart and asked Officer Roach if he could have it because he was still hungry.  *Id.* at 7 ¶ 3.

---

[1]  The Court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims.  That is because the core purpose of an initial review order is to determine whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the Court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.  On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment.  More generally, the Court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment in the event that the Court has overlooked a controlling legal principle or if there are additional facts that would warrant dismissal of a claim.

[2]  The Department of Correction website reflects that on January 30, 2019, Crispin was sentenced to four years of imprisonment.  *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=339978.

Crispin became frustrated because Officer Roach initially ignored his questions regarding the extra breakfast tray. *Id.* ¶ 4. Nurse Eric was present at Crispin's cell and passed his medications to him through the food slot. *Id.* ¶¶ 5-6.

During Crispin's ensuing conversation with Officer Roach about the extra breakfast tray, Crispin prevented Officer Roach from closing the food slot in the cell door by resting his right arm in the opening. *Id.* ¶ 7. Suddenly, Officer Roach lost his temper and slammed the door to the food slot on Crispin's right hand, thumb and arm. *Id.* Officer Roach ordered Crispin to pull his hand and arm back into the cell, but Crispin was unable to do so because his hand was wedged into the food slot. *Id.* at 8 ¶¶ 8-9. Crispin informed Officer Roach that he was stuck. *Id.* ¶ 9. Officer Roach then took the metal key used to lock and unlock food slot door to repeatedly stab the plaintiff's right arm and elbow and yelled at the plaintiff to pull his f***ing hand back into the cell. *Id.* Nurse Eric and Correctional Officer John Doe, who was stationed at the control desk in the IPM Unit, failed to take any action to stop Officer Roach from causing Crispin physical harm. *Id.* ¶ 10. Crispin experienced bleeding and severe pain and thought his right thumb was broken. *Id.* ¶ 11. He sought medical treatment from Officer Roach and Nurse Eric and requested that they call a supervisor. *Id.* Both Officer Roach and Nurse Eric refused Crispin's requests and moved to the next inmate's cell to dispense medication. *Id.*

After Nurse Eric and Officer Roach finished dispensing medication to the IPM Unit, Officer Roach returned to Crispin's cell with a canister of mace. *Id.* ¶ 12. Officer Roach threatened to spray Crispin with mace if he did not pull his hand into the cell. *Id.* Crispin informed Roach that he needed medical attention. *Id.* ¶ 13. In response, Officer Roach stated that Crispin would not be receiving medical treatment and threatened to spray him with mace if he did not

pull his hand into the cell.  *Id.*  When Crispin stated that he suffered from asthma, Officer Roach walked away from Crispin's cell.  *Id.*  After leaving Crispin's cell, Officer Roach informed Lieutenant Sciascia about the incident involving the Crispin's refusal to remove his arm and hand from the food slot.  *Id.* at 17, Ex. B.  Lieutenant Sciascia then visited Crispin and removed him from the cell to be treated for his injuries.  *Id.*

Nurse Eric cleaned and bandaged Crispin's wounds and provided him with pain medication.  *Id.* at 9 ¶ 14; at 15, Ex. A.  A prison official videotaped the provision of medical treatment to Crispin by Nurse Eric.  *Id.* ¶ 15.  Crispin informed Lieutenant Sciascia that Officer Roach had slammed the door to the food slot in his hand and arm.  *Id.*  In response, Lieutenant Sciascia suggested that Crispin should not have prevented Officer Roach from closing the door.  *Id.*  Officers then escorted Crispin back to his cell in the IPM Unit until it was time for lunch.  *Id.* ¶ 16.

At lunch time, officers sent Crispin to the Out-Patient Medical Unit to be evaluated by Dr. Valletta.  *Id.* ¶ 17.  Dr. Valletta entered an order that Crispin undergo x-rays of his right arm, hand and fingers, provided Crispin with a splint for his right thumb and injected him with medication to prevent infection or tetanus due to his having suffered a puncture wound from the rusty food slot door.  *Id.*  After Crispin returned to his cell, he experienced pain in his right thumb, hand and/or arm.  *Id.*

Officer Roach issued Crispin a disciplinary report for interfering with safety and security for holding the food slot door open.  *Id.* ¶ 18.  Lieutenant Sciascia signed off on the disciplinary report as Officer Roach's supervisor.  *Id.*  Crispin subsequently pleaded guilty to the disciplinary charge.  *Id.* at 10 ¶ 21.

On July 23, 2019, Crispin submitted a written request to preserve all video footage of the incidents that had occurred on July 22, 2019 at his cell as well as the treatment that he had received for his injuries. *Id.* at 9 ¶ 19; at 18-19, Ex. C. Crispin also completed and submitted an Inmate Request Form addressed to Warden Hannah regarding the use of force by Officer Roach. *Id.* at 10 ¶ 20. Warden Hannah referred the request to Captain Syed. *Id.* Either Crispin or Warden Hannah asked that a profile be created between Crispin and Officer Roach. *Id.* Crispin received a response from Captain Syed indicating and an investigation had been conducted and that Crispin had been in contact with the Connecticut State Police. *Id.*

On July 24, 2019, Crispin completed Inmate Request Forms regarding the conduct of Dr. Valletta and Nurse Eric. *Id.* at 11 ¶ 23. Crispin did not receive responses to the requests. *Id.* His attempts to contact Health Services Administrative Review Coordinator ("HSARC") Nadeau regarding his requests were unsuccessful. *Id.*

On July 29, 2019, Connecticut State Trooper Jane Doe visited Crispin at Garner and took his written statement regarding the alleged use of excessive force by Officer Roach on July 22, 2019. *Id.* at 11 ¶ 25; at 13-15, Ex. A. Trooper Doe did not contact Crispin after taking his statement and did not provide him with information about pressing criminal charges against Officer Roach. *Id.*

On July 30, 2019, Crispin met with Lieutenant Sciascia in connection with the Department of Correction's investigation of the incident involving Officer Roach and completed a written statement. *Id.* ¶ 26; at 16-17, Ex. B. Crispin did not hear about the outcome of the investigation. *Id.*

On August 19, 2019, Crispin filed a Level 1 Grievance regarding the conduct of Officer

Roach.  *Id.* at 10 ¶ 21; at 20-21, Ex. D.  On August 21, 2019, Warden Hannah denied the

Grievance.  *Id.*  On September 24, 2019, Crispin filed a Level 2 Appeal of the denial of his

Grievance.  *Id.* ¶ 22; at 23-25, Ex. E.  On October 24, 2019, District Administrator Mulligan

concurred with the conclusion of Warden Hannah and denied Crispin's Appeal.  *Id.*

On August 23, 2019, Crispin filed a Level 1 Medical Grievances regarding the conduct of

Dr. Valletta and Nurse Eric.  *Id.* at 11 ¶ 23.  Crispin did not receive responses to the grievances.

*Id.*

**Discussion**

Crispin contends that the defendants violated his First, Fifth, Eighth and Fourteenth

Amendment rights.  *Id.* at 11.  He sues the defendants in their individual and official capacities.

*See* ECF No. 1-1 at 2.

**Eleventh Amendment**

For relief, the plaintiff seeks only nominal, compensatory and punitive damages.

Requests for monetary damages for violations of an inmate's constitutional rights by State

employees in their official capacities are barred by the Eleventh Amendment.  *See Kentucky v.*

*Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for

monetary relief, also protects state officials sued for damages in their official capacity); *Quern v.*

*Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh

Amendment immunity).  Accordingly, all claims against the defendants in their official

capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

**Fifth Amendment**

Crispin asserts that the defendants violated his rights under the Fifth Amendment.  The

6

Fifth Amendment provides:

> "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

U.S. Const. amend. V.  There are no facts to support a plausible claim under the Fifth Amendment against any defendant.  Accordingly, the Fifth Amendment claim is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### First[3] and Fourteenth Amendments

Crispin alleges that HSARC Nadeau disregarded or failed to address the Inmate Requests and Level 1 Medical Grievances that he filed in July and August 2019 regarding his treatment by Nurse Eric and Dr. Valletta.  Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed.  *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes ... create federally protected due process entitlements to specific state-mandated procedures' ") (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)).  As Crispin has no constitutionally protected right to file a medical request or a grievance, the allegations that HSARC Nadeau neglected to respond or timely respond to his requests or medical grievances fails to state a plausible claim under the Fourteenth Amendment and is dismissed.[4]  *See* 28

---

[3] The Court can discern no viable First Amendment claim from the allegations in the Complaint.

[4]   Although Crispin alleges that he received a disciplinary report from Officer Roach, he concedes that he pleaded guilty to the disciplinary charge of interfering with safety and security because he did initially refuse to

U.S.C. § 1915A(b)(1).

**Eighth Amendment – Medical Needs**

The Eighth Amendment prohibits deliberate indifference by medical providers and prison officials to an inmate's serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976) (Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."). To state a claim for deliberate indifference to a serious medical need, a plaintiff must meet a two-pronged test. First, the inmate's medical need or condition must be an objectively "serious one." *Brock v Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment or treatment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (citations omitted). If a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," rather than a denial of any treatment for his or her condition, "it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (emphasis in original) (quoting *Chance*, 143 F.3d at 702).

---

remove his arm to permit Officer Roach to close the food slot door. *See* Compl. at 10 ¶ 21. Furthermore, there are no allegations that Crispin did not receive due process in connection with the issuance of the disciplinary report. Accordingly, the Court does not construe the complaint as raising a Fourteenth Amendment procedural due process claim.

The second or deliberate indifference prong is subjective.  Under this prong, the plaintiff must allege that the medical staff member or prison official "act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result."  *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).  The Second Circuit has defined the mental state of deliberate indifference as "[the] equivalent [of] subjective recklessness, as the term is used in criminal law" and that it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious . . . harm [to the inmate's health] will result."  *Id.* (citing *Farmer v. Brennan,* 511 U.S. 825, 836-37, 839-40 (1994).

Mere negligent or inadvertent conduct, however, does not constitute deliberate indifference.  *See Estelle*, 429 U.S. at 106 ("Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Salahuddin*, 467 F.3d at 280 ("recklessness entails more than mere negligence").  Nor does a difference of opinion between a medical provider and an inmate regarding a diagnosis or appropriate medical treatment.  *See Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

### Nurse Eric and Officer Roach

Crispin alleges that he experienced severe pain in his right arm, hand and thumb and bleeding from his right arm and elbow after his right arm and hand became wedged in the food

9

slot and Officer Roach stabbed his arm and elbow with the key used to lock and unlock the door to the food slot.  Although he initially thought he had broken his right thumb, an x-ray taken the day after the incident reflected no fracture to his thumb or hand.  *See* Compl. at 15, Ex. A. Crispin alleges that Nurse Eric observed Officer Roach inflict injuries to his right arm, hand and thumb and that he begged for medical treatment, but Nurse Eric did not immediately assess his injuries or provide treatment.  Instead, Nurse Eric finished dispensing medication to all the other inmates in the IPM Unit.  Crispin alleges that Officer Roach returned to his cell five to ten minutes later, threatened to spray him with mace if he did not pull his arm back into the cell and stated that Crispin would not be receiving medical treatment.  Officer Roach did notify his supervisor, Lieutenant Sciascia, about the incident and Nurse Eric and Lieutenant Sciascia returned to Crispin's cell a short time later.  Nurse Eric examined and treated Crispin's injuries in the presence of Lieutenant Sciascia.

In Crispin's statement to Lieutenant Sciascia, Crispin stated that he was evaluated and treated by Nurse Eric approximately thirty minutes after Officer Roach stopped assaulting him with the food slot door key.  *Id.* at 17, Ex. B.  Crispin does not allege that his condition, during this delay, worsened or that he was subject to increased risk of harm. The Court concludes that the "delay," even if fairly characterized as such, of less than an hour in treating Crispin's hand and arm does not plausibly allege that Crispin suffered from an objectively serious condition or risk of harm.  *See, e.g.*, *Jimenez v. Sommer*, No. 14-CV-5166 (NSR), 2017 WL 3268859, at *8 (S.D.N.Y. July 28, 2017) ("Even assuming as Plaintiff alleges, that the delay created 'unnecessary' pain, suffering, discomfort, and affected his mobility, these injuries are not sufficiently serious as a matter of law to satisfy the objective prong of a deliberate indifference

claim.") (collecting cases); *Ford v. Rodriguez*, 15 Civ. 4909 (PAC) (GWG), 2016 WL 6776345, at *5 (S.D.N.Y. Nov. 16, 2016) ("Given that Ford received reasonably prompt medical care, the fact that he endured a period of significant pain does not rise to a 'serious medical condition' and thus Ford's allegations do not meet the objective prong of the deliberate indifference test."), *report and recommendation adopted*, 2017 WL 58843 (S.D.N.Y. Jan. 5, 2017); *Fuentes v. Balcer*, No. 10-CV-684, 2013 WL 276679, at *8 (S.D.N.Y. Jan. 24, 2013) (finding that medical care was provided within approximately one hour and ten minutes and thus was within the category of "temporary delay" that courts have "generally recognized as insufficient to support a deliberate indifference claim") (citation and quotation marks omitted).  Nor does the short-term delay in the provision of treatment constitute deliberate indifference on the part of Nurse Eric.  *See, e.g.*, *Palacio v. Ocasio*, No. 02Civ.6726, 2006 WL 2372250, at *11 (S.D.N.Y. Aug. 11, 2006) (where delay in treatment was, at most, a little more than two hours, and "nothing in the record suggest[ed] that [plaintiff] suffered from a life-threatening or fast-degenerating condition or that prison officials deliberately delayed his treatment as a form of punishment," court found as a matter of law that delay did not rise to the level of deliberate indifference); *Santiago v. City of New York*, No. 98-cv-6543 (RPP), 2000 WL 1532950, at *6 (S.D.N.Y. Oct. 17, 2000) (holding that plaintiff failed to state a deliberate indifference claim because he received prompt medical treatment within hours after he complained of pain).

Accordingly, the Eighth Amendment deliberate indifference claim asserted against Nurse Eric and Officer Roach is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### Dr. Valletta

Crispin asserts that at lunch time on July 22, 2019, Dr. Valletta examined and assessed

his injuries, provided him with a splint for his thumb, gave him a shot to prevent either an infection or tetanus from developing in his thumb or hand and ordered that he undergo x-rays. Crispin states that he experienced pain after he returned to his cell.  He does not allege that his condition otherwise worsened prior to undergoing x-rays on July 23, 2019.  *See Patterson v. Westchester County*, No. 13 Civ. 0194(PAC)(AJP), 2014 WL 1407709, at *7 (S.D.N.Y. Apr. 11, 2014) (several-day-delay in x-ray of patient's injured ankle "did not create an objectively serious risk of harm."), *report and recommendation adopted*, 2014 WL 2759072 (S.D.N.Y. June 16, 2014).  Moreover, the x-rays reflected that Crispin had not fractured his thumb or hand.  Crispin has not plausibly alleged an objectively serious medical condition or risk of harm as required under the Eighth Amendment standard.

Furthermore, even if Crispin's injuries constituted a potentially serious medical condition, he has not alleged that Dr. Valletta "acted with a sufficiently culpable mental state, i.e., culpable recklessness as opposed to mere negligence" when he provided him with a splint for his thumb, administered a shot to prevent infection or tetanus and entered an order that he undergo x-rays.  *Lombardo v. Graham*, 807 F. App'x 120, 123 (2d Cir. 2020).  To the extent that Crispin experienced pain after his appointment with Dr. Valletta, he does not allege that he made Dr. Valletta aware of this symptom or that Dr. Valletta refused or failed to prescribe medication to treat the symptom.  Thus, Crispin has not met the subjective component of the Eighth Amendment standard either.  The claim that Dr. Valletta was deliberately indifferent to Crispin's medical needs is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### Eighth Amendment - Excessive Force and Failure to Intervene

Crispin alleges that Officer Roach used unnecessary and excessive force against him by

slamming the trap on his right hand and thereafter by continually stabbing him with the food slot

door key.  He alleges Nurse Eric failed to intervene in the use of excessive force. Warden

Hannah denied the grievance filed by Crispin regarding the assaultive conduct of Officer Roach

and District Administrator Mulligan affirmed the denial of the grievance on appeal.

In *Hudson v. McMillian*, 503 U.S. 1 (1992), the Supreme Court established the minimum

standard to be applied in determining whether force by a correctional officer against a sentenced

inmate states a constitutional claim under the Eighth Amendment in contexts other than prison

disturbances.  When an inmate claims that excessive force has been used against him by a prison

official, he has the burden of establishing both an objective and subjective component to his

claim. *See Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).

To meet the objective component, the inmate must allege that the defendant's conduct

was serious enough to have violated "contemporary standards of decency."  *Hudson*, 503 U.S. at

8 (internal quotation marks and citation omitted).  The extent of the inmate's injuries as a result

of the defendant's conduct is not a factor in determining the objective component.  *See Wilkins v.*

*Gaddy,* 559 U.S. 34, 37 (2010) (*per curiam*) ("core judicial inquiry" is "not whether a certain

quantum of injury was sustained," but rather whether unreasonable force was applied given the

circumstances); *Hudson*, 503 U.S. at 9 ("[w]hen prison officials maliciously and sadistically use

force to cause harm, contemporary standards of decency are always violated" irrespective of

whether significant injury is present).

The subjective component requires the inmate to show that the prison officials acted

wantonly and focuses on "whether force was applied in a good-faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm."  *Id.* at 7 (citing *Whitley v. Albers*, 475

13

U.S. 312, 320-321 (1986)).  The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (internal quotations and citation omitted).

To state a claim for a prison official's failure to intervene, a plaintiff must allege facts showing that: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) [the officer knew] that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene." *See Jean–Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd sub nom. Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012).  "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)).

### Officer Roach

Crispin concedes that he intentionally prevented Officer Roach from closing the food slot in the door of his cell by placing his right arm and hand in or across the slot.  He also acknowledges that Officer Roach repeatedly ordered Crispin to remove his hand from the food slot. He contends, however, that Officer Roach did not give him any or enough warning before attempting to forcefully shut the door to the food slot from the outside which caused the initial injury. And as a result, Crispin's hand became wedged in the slot and he was unable to pull it out of the slot and back inside the cell, Officer Roach's commands notwithstanding. When Crispin stated that his hand was stuck and he could not remove it from the slot, Roach used the metal food slot door key to stab Crispin multiple times in the arm and elbow.  Crispin experienced

severe pain, bleeding and a possible fracture to his right thumb.  The Court concludes that

Crispin has plausibly alleged that Officer Roach used more force than was necessary given the

*de minimus* threat posed by Crispin, who was locked in his cell at the time, and the allegations

that support an inference that Officer Roach did not attempt to temper the severity of the force

that he used against Crispin.  The Eighth Amendment excessive force claim will proceed against

Officer Roach in his individual capacity.

### Nurse Eric

Crispin contends that Nurse Eric stood by his cell and watched as Officer Roach stabbed

his arm and elbow with the food slot door key and that John Doe Officer, located at the unit

control desk, made no effort to stop Officer Roach from stabbing him.  Crispin does not indicate

how far the control desk was from his cell.  Nor is it clear how long the assault lasted or whether

as a medical staff member, Nurse Eric had authority to intervene in the use of force by a custody

staff member.  The facts alleged are insufficient to enable the Court to evaluate the factors listed

above.  Because the Court has concluded that the excessive force claim will proceed against

Officer Roach, the Court will permit the allegations that Nurse Eric and Correctional Officer Doe

failed to take steps to intervene in the use force will proceed for further development of the

record.

### Warden Hannah, Captain Syed, Lieutenant Sciascia
### District Administrator Mulligan

In denying Crispin's grievance regarding the use of force by Officer Roach, Warden

Hannah noted that Officer Roach had attempted verbal intervention and reasonable force to gain

Crispin's compliance with the order to remove his arm and hands from the food slot and that

medical staff members evaluated and treated him after the incident.  She concluded that Crispin's

allegations that Officer Roach had used unnecessary force could not be substantiated.  District

Administrator Mulligan concurred with the determination made by Warden Hannah that was

based findings made by officials who had reviewed the incident at the facility level and denied

Crispin's appeal.

A plaintiff seeking to recover money damages under section 1983 from a defendant in his

or her individual capacity must demonstrate "the defendant's personal involvement in the alleged

constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).

Thus, "liability for supervisory government officials cannot be premised on a theory

of respondeat superior because § 1983 requires individual, personalized liability on the part of

each government defendant."  *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014).  A plaintiff

may only recover damages against a supervisory official by showing that the official was

"personally involved" in the constitutional deprivation in one of five ways:

> 1) the defendant participated directly in the alleged constitutional violation, (2)
> the defendant, after being informed of the violation through a report or appeal,
> failed to remedy the wrong, (3) the defendant created a policy or custom under
> which unconstitutional practices occurred, or allowed the continuance of such a
> policy or custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant exhibited
> deliberate indifference to the rights of inmates by failing to act on information
> indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).[5]  Once a plaintiff properly

alleges that a defendant was personally involved in a constitutional deprivation, he or she "must

also establish that the supervisor's actions were the proximate cause of the plaintiff's

---

[5]   The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the
standards in *Colon* for establishing supervisory liability.  *See Lombardo v. Graham*, No. 19-1535-PR, 2020 WL
1909581, at *2 (2d Cir. Apr. 20, 2020) (summary order) ("Although we have observed that Iqbal may have
heightened the requirements for supervisory liability by requiring more direct personal involvement, we need not
decide that issue where, as here, the allegations are also insufficient to state a claim under *Colon*.") (citing *Grullon*,

constitutional deprivation." *Raspardo*, 770 F.3d at 116; *see also Poe v. Leonard*, 282 F.3d 123,

140 (2d Cir. 2002) (plaintiff must show "an affirmative causal link" between the supervisor's

involvement and the constitutional injury.).

There are no allegations that on July 22, 2019, District Administrator Mulligan, Warden

Hannah, Captain Syed or Lieutenant Sciascia was present for or directly involved in the use of

force by Officer Roach against Crispin.  Nor are there allegations to suggest that this was not an

isolated incident.  Rather, the only allegations against these defendants are that they did not take

steps to remedy the alleged use of force by Officer Roach after it had occurred when they denied

Crispin's grievances.  These allegations do not state a claim of personal involvement by

defendants Mulligan, Hannah, Syed or Sciascia in the underlying misconduct because none of

the defendants had the opportunity to remedy or prevent the misconduct while it was occurring.

*See, e.g.*, *Carter v. Warden of Bridgeport Corr. Ctr.*, No. 3:20CV918 (KAD), 2020 WL

5097489, at *3 (D. Conn. Aug. 28, 2020) (lack of allegations that warden had any involvement

in the alleged use of force or that lieutenant "knew at the time or in advance that the officers

would use excessive force . . . and failed to take steps to prevent such use" warranted dismissal

of claims against warden and lieutenant because "[n]otice after the fact of an isolated incident is

insufficient to establish supervisory liability.") (citing *Andrews v. Gates*, No. 3:17-CV-1233

(SRU), 2019 WL 2930063, at *8 (D. Conn. July 8, 2019) ("Although [plaintiff] notified each

[prison official] after the assault, notice after the fact of an isolated incident is insufficient to

establish supervisory liability.  .  .  . Because this was an isolated incident" and not an ongoing

violation of plaintiff's constitutional rights, "the supervisory defendants had no opportunity to

intervene to prevent the violation."); *Jones v. Wagner*, No. 3:20-CV-475 (VAB), 2020 WL

---

720 F.3d at 139).  For purposes of this decision, it is assumed that the categories outlined in *Colon* remain valid.

4272002, at *6–7 (D. Conn. July 24, 2020) (dismissing claim against prison district administrator who failed to timely respond to a grievance regarding prior use of force by correctional officer and lieutenant because "[k]nowledge of an isolated incident after the incident . . . does not support a claim for supervisory liability.") (citations omitted); *Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) ("After the fact notice of a violation of an inmate's rights is insufficient to establish a supervisor's liability for the violation. Receiving post hoc notice does not constitute personal involvement in the unconstitutional activity and cannot be said to have proximately caused the damage suffered by the inmate."). Accordingly, the Eighth Amendment excessive force claims against District Administrator Mulligan, Warden Hannah, Captain Syed and Lieutenant Sciascia are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### Failure to Investigate and Prosecute

Crispin alleges that on July 29, 2019, Connecticut State Trooper Jane Doe met with him at Garner and recorded his written statement regarding the July 22, 2019 incident. Crispin claims that he did not hear from Trooper Doe after July 29, 2019. On July 30, 2019, Crispin gave a written statement to Lieutenant Sciascia in connection with the Department of Correction's internal investigation into the incident. Crispin alleges that Lieutenant Sciascia's prior involvement as Officer Roach's supervisor on the of the day assault may have created a conflict of interest during Lieutenant Sciascia's subsequent investigation of the incident. In response to Crispin's July 23, 2019 written request addressed to Warden Hannah regarding the use of force by Officer Roach, Captain Syed indicated that an investigation had been conducted into Crispin's allegations. Crispin claims that he never received information regarding the outcome of the Department of Correction's investigation.

18

Crispin has no constitutionally protected right to a proper investigation.  *See Lewis v. Gallivan*, 315 F. Supp. 2d 313, 316-17 (W.D.N.Y. 2004) ("There is . . . no constitutional right to an investigation by government officials.") (internal quotation marks and citations omitted); *Santossio v. City of Bridgeport*, No. 3:01CV1460(RNC), 2004 WL 2381559, at *4 (D. Conn. Sept. 28, 2004) ("the United States Constitution does not grant plaintiffs a right to an adequate investigation or adequate after-the-fact punishment") (citing cases).  Thus, Crispin's allegations that Lieutenant Sciascia and Captain Syed failed to fully or adequately investigate his allegations or may have been biased during their investigation of the incident do not plausibly allege a violation of any constitutionally or federally protected rights and are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

In addition, a victim of allegedly criminal conduct is not entitled to a criminal investigation or the prosecution of the alleged perpetrator of the crime.  *See Leeke v. Timmerman*, 454 U.S. 83, (1981) (inmates alleging beating by prison guards lack standing to challenge prison officials' request to magistrate not to issue arrest warrants); *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *McCrary v. Cty. of Nassau*, 493 F. Supp. 2d 581, 588 (E.D.N.Y. 2007) ("A private citizen does not have a constitutional right to compel government officials to arrest or prosecute another person.").  Crispin claims that Trooper Doe met with him and witnessed his written statement regarding the conduct of Officer Roach but took no further action to enable him to pursue or press criminal charges against Officer Roach. The fact that Trooper Doe, after taking Crispin's statement, allegedly did not pursue criminal charges against Officer Roach does not rise to the level of a

constitutional violation, because Crispin had no right to have Officer Roach or any other defendants prosecuted for allegedly assaulting him on July 22, 2019. Accordingly, the claims against Trooper Jane Doe fail to state a claim upon which relief may be granted and are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Motion to Freeze Assets – ECF No. 5**

Crispin seeks to freeze all assets of the defendants to ensure that they will not transfer or hide any of their assets in an effort to "defeat . . . [the] collection of any awarded remedy from the court[]." Mot. at 1. Rule 64(a) of the Federal Rules of Civil Procedure provides in pertinent part that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." The procedure for obtaining a prejudgment remedy is governed by state law. *See Bahrain Telecomm. Co. v. DiscoveryTel, Inc.*, 476 F. Supp. 2d 176, 183 (D. Conn. 2007); *see also Everspeed Enterprises Ltd. v. Skaarup Shipping Int'l.*, 754 F. Supp. 2d 395, 401 (D. Conn. 2010) ("Rule 64 of the Federal Rules of Civil Procedure permits a plaintiff to utilize the state prejudgment remedies available to secure a judgment that might ultimately be rendered in an action.").

"Under Connecticut law, a prejudgment remedy is appropriate if the court, 'upon consideration of the facts before it and taking into account any defenses, counterclaims or setoffs ... finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought[.]'" *Roberts v. TriPlanet Partners, LLC*, 950 F. Supp. 2d 418, 420 (D. Conn. 2013) (quoting Conn. Gen. Stat. § 52-278d(a)). Thus, "[a] prejudgment remedy may be obtained when the plaintiff establishes that

there is probable cause to sustain the validity of his claims." *Davila v. Secure Pharmacy Plus*, 329 F. Supp. 2d 311, 313 (D. Conn. 2004) (citing Conn. Gen. Stat. § 52-278d).

Section 52-278b of the Connecticut General Statutes provides that "no prejudgment remedy shall be available to a person in any action at law or equity (1) unless he has complied with the provisions of sections 52-278a to 52-278g[.]" Conn. Gen. Stat. § 52-278b. Section 52-278c sets forth the required documents that must be filed in connection with an application for a prejudgment remedy, and the required notice that must be served upon a defendant. Conn. Gen. Stat. § 52-278c. Except in instances inapplicable here, an application for a prejudgment remedy must be accompanied by an "affidavit sworn to by the plaintiff or any competent affiant setting forth a statement of facts sufficient to show that there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought[.]" Conn. Gen. Stat. § 52-278c(a)(2). The application must also include order and summons forms. Conn. Gen. Stat. § 52-278c(a)(3) & (4) and (b). Further, section 52-278c "requires that a notice and claim form containing specific language be attached to the application for prejudgment remedy." *Davila*, 329 F. Supp. 2d at 314 (citing Conn. Gen. Stat. § 52-278c(e), (f), and (g)).

Crispin's one-page request for a prejudgment remedy to freeze the assets of the defendants does not comply with the statutory requirements set forth in Conn. Gen. Stat. § 52-278c nor meet the exacting standards required thereunder and is denied. *See, e.g.*, *Adeyemi v. Murphy*, No. 3:12CV960, 2012 WL 6155213, at *2 (D. Conn. Dec. 11, 2012) (denying a motion for prejudgment remedy for failure to comply with the statutory requirements of Conn. Gen. Stat. § 52-278c); *Porter v. Yale Univ. Police Dep't*, No. 3:11-CV-526, 2011 WL 3290212, at *4 (D.

21

Conn. Aug. 1, 2011) (same).

**Motion for Discovery/Request for Production of Documents – ECF No. 6**

Crispin's motion for discovery consists of a request for production of documents addressed to all defendants.  Discovery requests are not to be filed with Court.  *See* D. Conn. L. Civ. R. 5(f)1.  Further, discovery is not to be sought through the Court in the first instance. Accordingly, the motion for discovery/request for production of documents is denied.  Crispin is not precluded from seeking discovery from the Defendants after counsel for the defendants has responded to the Standing Order Re: Initial Discovery Disclosures.

## ORDERS

In accordance with the foregoing analysis, the Court enters the following orders:

(1)      The Motion to Freeze Assets, [**ECF No. 5**], and the Motion for Discovery/Request for Production of Documents, [**ECF No. 6**], are **DENIED**.

All claims against the defendants in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2).  The following claims asserted against the defendants in their individual capacities are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1): the Fifth Amendment claim, the Fourteenth Amendment due process claim that HSARC Nadeau failed to process requests and grievances, the Eighth Amendment deliberate indifference to medical needs claims against Dr. Valletta, Nurse Eric and Correctional Officer Roach; the Eighth Amendment excessive force claims against District Administrator Mulligan, Warden Hannah, Captain Syed and Lieutenant Sciascia, the claim that Lieutenant Sciascia and Captain Syed failed to properly or fully investigate Crispin's allegations of excessive force by Correctional Officer Roach, and all allegations against State Trooper Jane Doe.

22

The following claims asserted in the Complaint, [**ECF No. 1**], will **PROCEED**: The Eighth Amendment excessive force claim will proceed against Correctional Officer Roach in his individual capacity and the Eighth Amendment failure to intervene claim will proceed against Nurse Eric and Correctional Officer John Doe in their individual capacities.

The Court notifies Crispin that the Clerk cannot serve the Complaint on Correctional Officer John Doe because he has not provided the first or last name of this defendant. Crispin will have ninety (90) days from the date of this order to conduct discovery and file a notice identifying the John Doe defendant by his first name and last name. If Crispin does not provide the Clerk with the first and last name of the John Doe Correctional Officer within the time specified, the Court will dismiss the claim against the John Doe defendant pursuant to Rule 4(m), Fed. R. Civ. P.

(2)    On or before **November 13, 2020,** the Clerk shall verify the current work addresses of: Nurse Eric and Correctional Officer Roach with the Department of Correction Office of Legal Affairs and mail a copy of the Complaint, this Order and a waiver of service of process request packet to Nurse Eric in his individual capacity at the address provided by the Department of Correction Office of Legal Affairs and mail a copy of the Complaint, this Order and a waiver of service of process request packet to Correctional Officer Roach in his individual capacity at the address provided by the Department of Correction Office of Legal Affairs. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of the requests. If either defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)     Correctional Officer Roach and Nurse Eric shall file a response to the Complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include all additional defenses permitted by the Federal Rules.

(4)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **April 23, 2021**.  Discovery requests need not be filed with the Court.

(5)     All motions for summary judgment shall be filed by **May 23, 2021.**

(6)     The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

(7)     The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which will be sent to the parties by the Clerk. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

(8)      According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If Crispin changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case.  Crispin must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  He should also notify the defendants or defense counsel of his new address.

(10)     Crispin shall utilize the Prisoner Efiling Program when filing documents with the Court.  Crispin is advised that the Program may be used only to file documents with the court. Because Local Rule 5(f) rule provides that discovery requests are not to be filed with the Court, discovery requests must be served on defendants' counsel by regular mail.

SO ORDERED at Bridgeport, Connecticut this 23rd day of October, 2020.

_____/s/_____
Kari A. Dooley
United States District Judge

25