## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSSEAN CRISPIN | ) | 3:20-CV-01184 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROACH ET AL. | ) | JUNE 12, 2023 |
| *Defendant*. | ) | |

## MEMORANDUM OF DECISION
### RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 109)

Kari A. Dooley, United States District Judge:

The Plaintiff, Jossean Crispin ("Crispin" or "Plaintiff"), filed this civil rights action pursuant to 42 U.S.C. § 1983, asserting an excessive force claim against Defendant, Correctional Officer Roach, and a claim for failure to intervene in Roach's use of excessive force against Defendant "Nurse Eric." Defendant Nurse Eric filed a motion for summary judgment on the ground that Plaintiff failed to properly exhaust his administrative remedies before commencing this action.[1] Plaintiff filed an objection to the motion. For the following reasons, the motion for summary judgment is GRANTED.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113–14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the

---

[1] The motion was also filed by a Defendant identified only as John Doe. As Crispin never identified this Defendant, claims against John Doe were dismissed on May 8, 2023. *See* ECF No. 115.

substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense…" *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the Court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation" but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *See Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the Court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Facts[2]**

According to the Defendant's LRS, the following facts are undisputed:

---

[2] The facts are taken from the Defendant's Local Rule 56(a) Statement ("LRS") and supporting exhibits. Crispin did not file a Local Rule 56(a)(2) statement, but he did deny the facts asserted by the Defendant and filed his own sworn statement and that of another person in support of those denials. Although Crispin did not comply with the Local Rules, the Court has considered his submission in its entirety and does not deem admitted the Defendant's statement of fact as permitted under the rules. *See* D. Conn. Local Rule 56(a)(1).

Crispin is an individual formerly incarcerated at Garner Correctional Institution ("Garner") in the custody of the Connecticut Department of Correction ("DOC"). *See* Def. LRS at ¶ 1. Crispin filed this lawsuit on August 4, 2020, naming Officer Roach and other DOC personnel based on an incident at Garner on July 22, 2019. *See id.* at ¶ 2. Upon initial review of the Complaint, the Court dismissed all claims other than the alleged Eighth Amendment excessive force claim against Officer Roach and the alleged Eighth Amendment failure to protect claim against Nurse Eric and Officer John Doe. *See id.* at fn1. Subsequently, on May 8, 2023, the Court dismissed all claims against Officer John Doe, as Plaintiff failed to identify him. *See* ECF No. 115.

As the Administrative Remedies Coordinator at Garner, Counselor Guaman keeps records of all non-health related administrative remedies as well as the inmate Grievance Log.[3] *See* Def. LRS at ¶ 4. DOC Administrative Directive 9.6 Section 6(C) states that a Level 1 administrative remedy grievance must be filed within 30 calendar days of the occurrence or discovery of the cause of the grievance. If a Level 1 grievance is rejected, it may be appealed to Level 2. *See* Def. LRS at ¶ 6–7. Counselor Guaman conducted a thorough search of all non-health related administrative remedies filed by inmates at Garner to determine whether Crispin filed one relating to the July 22, 2019 incident at issue in this lawsuit. *See id.* at ¶ 8. Garner's records reveal that Crispin filed a grievance in connection with that incident against Officer Roach only, which he then appealed to a Level 2 grievance. Thus, Crispin exhausted his administrative remedies against Officer Roach, but he did not file grievances against any other DOC personnel. *See id.* at ¶ 9. Counselor Guaman also confirmed with the medical grievance coordinator that no medical grievances were filed by Crispin relating to the July 22, 2019 incident. *See id.* at ¶ 10.

---

[3] DOC Administrative Directive 9.6 outlines the administrative remedy procedure for inmates. *See* Def. LRS at ¶ 5; discussed *infra*.

In response to the motion for summary judgment, Crispin offers his own sworn opposition, an affidavit of another inmate, and several documents, which he argues establish that he was unable to exhaust his administrative remedies because he was affirmatively blocked from doing so. The specifics of these statements and the documents attached thereto shall be discussed as necessary.

**Discussion**

The Defendant asserts that Crispin failed to exhaust his administrative remedies before commencing this action. The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies before a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983…or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion": the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly"). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211.

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by…making informal

complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"); *Timmons v. Schriro*, No. 14-cv-6606 (RJS), 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("The law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA.").

The Supreme Court has held that the requirement for proper exhaustion is not met when a grievance is not filed in accordance with the deadlines established by the administrative remedy policy. *See Jones*, 549 U.S. at 217–18 (citing *Woodford*, 548 U.S. at 93–95). Special circumstances will not relieve an inmate of his obligation to comply with the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross*, 578 U.S. at 642. The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (quotation marks and internal citations omitted).

The *Ross* Court identifies three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 643–44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a

grievance process through machination, misrepresentation, or intimidation." *Id*. The Second

Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]"

*Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016). In considering the issue of availability,

however, the court is guided by these illustrations. *See Mena v. City of New York*, No. 13-cv-2430

(RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

   Exhaustion of administrative remedies is an affirmative defense. Thus, the defendant bears

the burden of proof. *See Jones*, 549 U.S. at 216. Once the defendant establishes that administrative

remedies were not exhausted before the inmate commenced the action, the plaintiff must establish

that administrative remedy procedures were not available to him under *Ross* or present evidence

showing that he did exhaust his administrative remedies. *See Smith v. Kelly*, 985 F. Supp. 2d 275,

284 (N.D.N.Y. 2013) ("[O]nce a defendant has adduced reliable evidence that administrative

remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those

administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing

exhaustion [or] unavailability").

   The general inmate grievance procedure is set forth in Administrative Directive 9.6. *See*

Def. LRS, Ex. A, ECF No. 41-2, at 13–25. An inmate must first attempt to resolve the matter

informally. He may attempt to verbally resolve the issue with an appropriate staff member or

supervisor. *See* Dir. 9.6(6)(a)(i). If attempts to resolve the matter verbally are not effective, the

inmate must make a written attempt using a specified form and send the form to the appropriate

staff member or supervisor. *See* Dir. 9.6(6)(a)(i)(2)(a). If an inmate does not receive a response to

the written request within fifteen business days, or the inmate is not satisfied with the response to

his request, he may file a Level 1 grievance on form CN 9602. *See* Dir. 9.6(6)(a)(ii).

   The Level 1 grievance must be filed within thirty calendar days from the date of the

occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *See* Dir. 9.6(6)(a)(ii). The Unit Administrator shall respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. *See* Dir. 9.6(6)(b)(i)(3). The Unit Administrator may extend the response time upon notice to the inmate on the prescribed form. *See* Dir. 9.6(6)(b)(i)(4)(a)(i); Dir. 9.6(5)(j). The inmate must appeal to Level 2 the disposition of the Level 1 grievance by the Unit Administrator or the Unit Administrator's failure to dispose of the grievance in a timely manner. The Level 2 appeal of a disposition of a Level 1 grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. The Level 2 appeal of the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner must be filed within sixty-five days from the date the Level 1 grievance was filed by the inmate and is decided by the District Administrator. *See* Dir. 9.6(6)(b)(ii)(1) & (2). Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure, or Level 2 appeals to which there has been an untimely response by the District Administrator. *See* Dir. 9.6(6)(b)(iii)(1).

Based upon the affidavit of Administrative Remedies Coordinator Guaman, Defendant has established that Crispin did not exhaust his administrative remedies. Crispin acknowledges as much but asserts that he was affirmatively thwarted by Garner employee Nadeau (and others) from doing so.[4]  The question, then, is whether there is a genuine issue of material fact as to whether Crispin is excused from exhausting his administrative remedies as contemplated under *Ross.*

---

[4] Crispin takes issue with the Court's determination to dismiss similar claims against Nadeau in the Initial Review Order.  However, simply because Nadeau is not a defendant does not mean that evidence regarding her conduct cannot be brought before the Court. Indeed, Crispin has by his own statement and that of another inmate accomplished as much. This evidence will be examined to determine whether a genuine issue of material fact exists on the exhaustion issue.

Plaintiff avers that Nadeau (and others at Garner) systematically block the grievance procedure by refusing to accept grievances. Plaintiff offers the Affidavit of another inmate to whom Plaintiff showed a series of health services remedy forms, to include one against Nadeau for failing to accept his requests, and at least three others to which the Affiant avers Plaintiff told him he had received no responses.[5] Plaintiff also attaches a five (5) page letter he sent to then-Commissioner of the DOC, Rollin Cook, and the "Director of Health & Addiction Services," which discusses Plaintiff's concern that he is being blocked from raising multiple issues about mental health treatment at Garner. He then details fifteen (15) different "remedies and appeals" which were submitted[6] (or re-filed through his letter); the dates of the grievances; the person against whom the grievance was filed, and he identifies each as returned and "refused to be filed."

Plaintiff's evidence does not raise a genuine issue of material fact as to whether he exhausted his administrative remedies under Administrative Directive 9.6. First, all of Plaintiff's evidence addresses only his ability to file and seek redress related to his mental health treatment. Grievances arising out of medical issues are exhausted by filing a Health Services Review ("HSR") as provided in Directive 8.9.[7] As the claim against Nurse Eric is a failure to intervene in or protect from the use of excessive force by Officer Roach, A.D. 9.6 governs the exhaustion process.[8] Counselor Guaman keeps all records of "non-health related inmate administrative remedies."

---

[5] It is unclear the extent to which the Affiant has any personal knowledge of Nadeau's conduct as it relates to Plaintiff's efforts to file grievances, as it appears he relies upon Plaintiff's assertions and then avers that he personally observed the grievance forms.

[6] Notably, none involved the July 22, 2019 incident involving Officer Roach and Nurse Eric.

[7] *See* Administrative Directive 8.9, available at http://portal.ct.gov/DOC/AD/ADChapter-8. There are two types of HSRs. The first seeks review of an administrative issue, *i.e.*, a particular practice, procedure, administrative provision or policy, or it may allege improper conduct by a health services provider. The second seeks review of a diagnosis or treatment, including a decision to provide no treatment. *See* Dir. 8.9(9). Nurse Eric's alleged conduct implicates neither, while the concerns identified in Plaintiff's evidence are clearly matters governed by A.D. 8.9.

[8] Plaintiff initially asserted an Eighth Amendment claim against Nurse Eric for deliberate indifference to medical needs. The claim was dismissed as wholly unsupported by the allegations. Had such a claim been properly raised, exhaustion under A.D. 8.9 would have governed this claim.

Whether Crispin was able to address his complaints about his mental health treatment is not relevant to whether he could have filed a Level 1 grievance against Nurse Eric under A.D. 9.6. Indeed, he clearly could have because he exhausted his administrative remedies against Officer Roach arising from the same incident.

Further, even if this evidence was somehow relevant to the exhaustion issue, it still fails to raise a genuine issue of material fact. All the evidence offered is dated well beyond the deadline by which Plaintiff had to file his Level 1 grievance in this matter. The Affidavit is dated March 2020 and pertains to health service remedies dating from December 2019 through March 2020. The fifteen health service remedies identified in the letter to Commissioner Rollin are dated from October 12, 2019 through March 2020. Officer Roach's use of excessive force, and therefore Nurse Eric's failure to intervene, allegedly occurred on July 22, 2019. Plaintiff was therefore required to file his Level 1 grievance by August 21, 2019. So even if Plaintiff was blocked from his health service remedies between October 2019 and March 2020, there is no evidence that anyone was thwarting or preventing the filing of grievances in July and August of 2019. And again, he clearly was not, as he was able to exhaust his claims against Officer Roach.

Accordingly, the Court concludes that there is no genuine issue of material fact as to whether Plaintiff exhausted his administrative remedies. He did not.

**Conclusion**

For the foregoing reasons, Defendant Nurse Eric's motion for summary judgment (ECF No. 109) is GRANTED.

**SO ORDERED** at Bridgeport Connecticut this 12th day of June 2023.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE